STATE v. ASA WILLIAMS, HUGH WARD McCAIN, WALTER V. ASHLEY AND BENNY DANSAVAGE.

(Filed 16 June, 1961.)

**1. Criminal Law § 159—**

Exceptions and assignments of error not brought forward and argued in the brief will be deemed abandoned. Rule of Practice of the Supreme Court, No. 28.

**2. Conspiracy § 6—**

While conspiracy may be proved by circumstantial evidence, such evidence must establish facts from which an agreement to do a specific unlawful act may be legally inferred, and a conviction cannot be upheld if the facts are as consistent with innocence as with guilt.

**3. Same—**

Evidence tending to show that four persons conspired to assault and disable a particular person, and that two of them thereafter burned a building, is insufficient to support conviction of the other two of conspiracy to burn the building even though there is evidence that one of the second two defendants paid a sum of money to one of the arsonists after the building had been burned, there being no evidence that the payment was for the burning of the building.

**4. Criminal Law § 162—**

Assignments of error to questions propounded by the solicitor to a witness during the trial cannot be sustained when defendant's objection to each of the questions is sustained, or when what the witness would have testified had he been permitted to answer does not appear in the record.

**5. Same—**

A defendant cannot complain of testimony elicited by his own counsel on cross-examination of a witness.

**6. Conspiracy § 7:　Criminal Law § 106—**

In charging upon the principle that a single defendant cannot be convicted of conspiracy, a statement of the court that the jury might return a verdict of guilty as to any two or more or all or not guilty as to any one or more or all, as the jurors might be "satisfied from the evidence," will not be held for prejudicial error, it being apparent that this portion of the charge did not relate to the burden of proof and that the court had theretofore and thereafter given explicit and correct instructions as to the burden of proof, and that the jury could not have been misled.

**7. Same—**

In stating the principle that the punishment in the event of a conviction was for the court and not the jury, a statement of the court that it was the responsibility of the jury to return a verdict of guilty or not guilty as the jury should find the facts to be beyond a reasonable doubt, will not be held for prejudicial error, it being apparent that this portion

of the charge did not relate to the burden of proof and that the court had theretofore and thereafter given explicit and correct instructions as to the burden of proof, and that the jury could not have been misled.

APPEAL by defendants from *Mallard, J.*, 26 September Mixed Term 1960 of ORANGE.

This is a criminal action. In Case No. 1629, the defendants Asa Williams, Hugh Ward McCain, Walter V. Ashley, and Benny Dansavage were charged in a bill of indictment with the crime of conspiring to feloniously set fire to and burn a building in the possession of and used by the Reverie Lingerie, Inc., in the manufacture of lingerie.

In Case No. 1630, the defendants Hugh Ward McCain and Asa Williams were charged in a bill of indictment with the crime of feloniously setting fire to and burning a building in the possession of and used by the Reverie Lingerie, Inc., in the manufacture of lingerie.

In Case No. 1631, the defendants Asa Williams, Hugh Ward McCain, Walter V. Ashley, and Benny Dansavage were charged in a bill of indictment with the crime of conspiring to commit a secret assault upon one O'Neal Gosnell, by breaking his arms.

The Solicitor moved that the three cases be consolidated for trial. The defendants objected.

The trial court in its discretion granted the Solicitor's motion to consolidate Cases Nos. 1629 and 1630 for trial, but denied the motion as to Case No. 1631, which is still pending for trial in the Superior Court of Orange County.

The State's evidence tends to show that Reverie Lingerie, Inc. owned a building in Hillsboro, Orange County, North Carolina, in 1957; that it employed about 100 people, none of whom were Union members; that the International Ladies Garment Workers Union undertook to organize these employees and brought about a strike from about 3 March 1957 until 27 September 1957 and maintained a picket line thereat; that as a result of the strike approximately fifty per cent of the employees stayed out of work; that defendants Ashley and Dansavage were organizers with the above Union and were seen from time to time on the picket line; that on 27 September 1957 the plant of Reverie burned to the ground between the hours of 6:00 p.m. and 9:00 p.m. No one was in attendance at the plant that night. It was not being operated that day. It was during Jewish holidays and the plant was closed during that time.

Betty Johnson, an employee of the Southern Bell Telephone & Telegraph Company (hereinafter referred to as Southern Bell) at Birmingham, Alabama, testified that she accompanied the defendants

Williams and McCain, also employees of Southern Bell at Birmingham, from Birmingham to Atlanta, Georgia, on 25 September 1957; that they spent the night in the Piedmont Hotel in Atlanta, where they met defendant Ashley, whom she had known in Birmingham; that Ashley said he wanted Williams and McCain to go to Durham, North Carolina, to break a man's arms and beat him up; that Williams and McCain agreed to make the trip; that Ashley gave them a telephone number and a name to call when they got to Durham. Ashley also gave them expense money for the trip. She testified that she accompanied Williams and McCain to Durham the next day where Williams and McCain got in touch with Dansavage over the telephone and that he met them in his car somewhere in downtown Durham; that she remained in the car they drove to Durham and did not hear the conversation between Williams, McCain and Dansavage in Dansavage's car.

The witness and Williams and McCain spent the night at the Dutch Village Motel in Durham. The next morning they had breakfast at the Rebel Restaurant where they met and talked with Dansavage. While they were at this restaurant, Dansavage told them where "that man" lived. He also told them where the plant was located that was on strike where "that man" worked. He gave them the location of the home of the man they talked about, and told them that he, Dansavage, could be contacted at the Chesterfield Motel, where he was staying. He instructed them to call him, not to come by there. He said he didn't want anybody to see them at the motel with him.

This witness further testified that later that day she, Williams and McCain followed the instructions of Dansavage and located the Reverie plant at Hillsboro, North Carolina, and "that man's" house, but did not find him. "Before we got to the plant, there was a conversation between Williams and McCain as to what they were going to do. Williams and McCain were going to burn the plant down. * * * (T)hey drove up behind the plant on a dirt road on the east side of the plant * * * and turned the car around * * * facing the highway * * *. Asa Williams got out of the car, broke the back window of the building, and threw something into the building. I don't know what he threw into the building contained, but I know it was something that was supposed to explode. Before Williams threw this object in the broken window, he lit the end of it. After it was thrown into this window, it just made a big pop sound, and we left."

The witness continued, "At the time Williams threw this lit object into the building, McCain was driving the automobile and after Williams got back into the car, we left the scene immediately. When we got to the highway, we turned right and drove away pretty fast. I

really don't know how long we drove before we stopped, it was two or three hours." They drove in the direction of Atlanta, and went on to Atlanta the next day.

This witness further testified that defendant Ashley had instructed them to call him before they came back to the hotel in Atlanta. A call was made and they went to the Piedmont Hotel, where she, Williams and McCain met Ashley in his room. Mr. Ashley told them when they got there "that the plant had been completely burned down, that he had already got word." The defendant Ashley then paid Williams and McCain some money, but the witness did not know how much.

The State also offered evidence tending to show that the defendant Ashley was upset and displeased with the burning of the plant. It likewise introduced statements made by Betty Johnson to investigators of her employer and to agents of the State Bureau of Investigation of North Carolina (hereinafter referred to as SBI), in corroboration of her testimony at the trial.

The jury returned a verdict of guilty as charged against the defendants on both bills of indictment, and from the judgments imposed on the verdicts, the defendants appeal, assigning error.

*Attorney General Bruton, Asst. Attorney General McGalliard for the State.*
*Bonner D. Sawyer; Ledford & Ledford for the defendants.*

DENNY, J.  At the close of the State's evidence each one of the defendants moved for judgment as of nonsuit. The motions were denied and each defendant rested without introducing any evidence, and renewed his motion. The motions were again denied and each defendant excepted to the ruling and assigns it as error. However, only assignments of error Nos. 42 and 43, set out in behalf of defendants Ashley and Dansavage, were brought forward and argued in the appellants' brief. Therefore, exceptions and assignments of error Nos. 40 and 41, challenging the correctness of the ruling on the motions for judgment as of nonsuit as to the defendants Williams and McCain, will be treated as abandoned. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 562, *et seq.*

The evidence tends to show that Ashley, Williams and McCain entered into an agreement pursuant to which Williams and McCain were to commit an assault on "some man" who worked at the Reverie plant, and that the trip to Durham was in furtherance of that agreement. However, there is no evidence tending to show that Ashley conspired with them to burn the plant of the Reverie Lingerie, Inc.

Further, the State concedes that the fact that Ashley was "very surprised and displeased that the plant had been burned" and that he was "upset about it," tends to exculpate him. There is evidence tending to show, however, that Ashley conspired with Williams and McCain for them to inflict personal injury on "some man" who worked at the Reverie plant and who would not co-operate with the Union in its strike at the Reverie plant; and that Ashley, who was a Union organizer, wanted this man physically incapacitated to the extent he would be unable to work. This evidence is further supported by the fact that the defendant Dansavage gave Williams and McCain the address of "the man" whom they wanted assaulted and disabled. Here, again, the evidence tends to show that Dansavage knew Williams and McCain were in Durham on a nefarious or unlawful mission. He told them that he, Dansavage, could be contacted at the Chesterfield Motel, where he was staying, but he instructed them to call, and not to come by there. He said "he didn't want anybody to see them at the motel with him." This was rather an unusual statement, if Williams and McCain were in Durham on a legitimate mission. Even so, there is no direct evidence that Dansavage was a party to the conspiracy to burn the plant. The conduct of Ashley was suspicious, particularly since Williams and McCain returned to Atlanta and were paid some money by Ashley after Ashley knew the plant had been burned and also knew that Williams and McCain had not located "the man" they supposedly went to Durham to assault and disable.

It is a fundamental rule of law, however, that one cannot be guilty of a conspiracy based upon acts done or declarations made after the conspiracy has ended. *Stanley v. United States* (6th Cir.), 245 F. 2d 427; *Cleaver v. United States* (10th Cir.), 238 F. 2d 766.

In *S. v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762, this Court quoted with approval from *Johnson v. State*, 208 Ind. 89, 194 N.E. 619, as follows: "There must be an agreement or joint assent of the minds of two or more before there can be a conspiracy. Such agreement or joint assent of the minds need not be proved by direct evidence. * * * There must be, however, an agreement, and there must be such evidence to prove an agreement directly or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion, nor does evidence of mere relationship between the parties or association show a conspiracy." *S. v. Summerlin*, 232 N.C. 333, 60 S.E. 2d 322; *S. v. Whiteside*, 204 N.C. 710, 169 S.E. 711; *S. v. Ritter*, 197 N.C. 113, 147 S.E. 733.

A conviction should not be upheld if the evidence is as consistent

with innocence as with guilt. 15 C.J.S., Conspiracy, Section 93, page 1150.

A careful consideration of the evidence adduced in the trial below leads us to the conclusion that the State's evidence is insufficient to sustain the convictions of defendants Ashley and Dansavage for conspiracy to burn the plant of the Reverie Lingerie, Inc. Assignments of error Nos. 42 and 43, challenging the correctness of the rulings below on the respective motions for judgment as of nonsuit, interposed by the defendants Ashley and Dansavage, will be upheld.

Assignments of error Nos. 4, 6, 9, 11, 13, 14, 15, 16, 17, 18, 19, 21, 26, 30, 31, 35 and 38 are directed to questions propounded by the Solicitor during the course of the trial. Each one of the foregoing assignments of error is without merit and must be overruled for two reasons. First, the defendants' objection to each and every one of the questions involved was sustained, and second, what answer the witnesses would have given to the respective questions propounded if the witnesses had been permitted to answer, does not appear in the record. S. v. Poolos, 241 N.C. 382, 85 S.E. 2d 342; S. v. Ballenger, 247 N.C. 260, 100 S.E. 2d 845; S. v. Maynard, 247 N.C. 462, 101 S.E. 2d 340; S. v. Jones, 249 N.C. 134, 105 S.E. 2d 513; Bd. of Education v. Mann, 250 N.C. 493, 109 S.E. 2d 175; S. v. Peeden, 253 N.C. 562, 117 S.E. 2d 398.

The defendants have numerous additional assignments of error directed to certain questions relating to where the State's witness, Betty Johnson, was kept for several weeks preceding the trial of this action. Many of these assignments of error are directed to identical questions to which the defendants objected and the objections were sustained and which were included in the above-numbered assignments of error which we have overruled.

The State's witness, Betty Johnson, on cross-examination, testified as to the various places she lived after the investigation of this case was begun by special agents of Southern Bell and the SBI. It was brought out by defendants' counsel that her employer, Southern Bell, was paying her salary and expenses in the various motels at which she stayed. It was likewise brought out without objection, on the direct examination of one of the special agents of Southern Bell, that Betty Johnson moved from Birmingham to Atlanta at the suggestion of the special agent. This witness testified: "We had her safety in mind * * *. We paid her hotel bill and daily per diem." This witness further testified without the objection of any of the defendants except McCain, that "She later removed to Birmingham, at my suggestion, for the same reason. She later moved from Birmingham to Florida at my suggestion for the same reason."

Testimony as to the different places Betty Johnson stayed and who paid her expenses for several weeks prior to the trial was repeatedly admitted without objection by any of the defendants. Counsel for the defendant Williams, on cross-examination, propounded the following question to an agent of the SBI: "Why were you keeping such close contact with her?" The record states that all of the defendants objected and that the court sustained the objection as to all the defendants except Asa Williams, and instructed the jury not to consider the answer against any of the defendants except as to Asa Williams. This witness then testified: "We were keeping such close contact on her because we had information that her life was at stake; that there had been a man hired to kill her and that two private investigators had also been hired to locate her so that this third party could kill her. We had nothing upon which to base that except what I had heard, and we acted on that information. We had no facts upon which to base our action except the information we received." Thereupon, counsel for Williams undertook to ascertain the source of the SBI's information. The State objected. Counsel for defendant Williams insisted on going into the matter to ascertain "whether or not there is any basis whatever for his statement that they had information that someone had been hired to do bodily harm to her, and to see whether or not it can be traced, in any way, to Asa Williams." It was then brought out that the SBI had received its information from one of the special agents of Southern Bell. Williams excepted and assigns as error the admission of this evidence against him. This information having been brought out by counsel for Williams, on cross-examination, over the objection of all the other defendants, he cannot complain of the answers elicited by his own counsel. *S. v. Case*, 253 N.C. 130, 116 S.E. 2d 429. All of these assignments of error are overruled.

Assignment of error No. 54 is to the following portion of the charge to the jury: " * * * so your verdict may be guilty as to any two or more or all, or not guilty as to any one or more or all, as you may find and are satisfied from the evidence." This portion of the charge in context was directed to bill of indictment No. 1629, the bill charging the defendants with conspiracy to burn the Reverie plant, and reads as follows: " * * * the court instructs you that under the evidence in this case and the law applicable thereto, that you may return a verdict of guilty as to any two or more of the defendants, or you may return a verdict of not guilty as to one or all of the defendants; you cannot find one alone guilty, because it is necessary that at least two combine in order to form a conspiracy (so your verdict may be guilty as to any two or more or all, or not guilty as

to any one or more or all, as you may find and are satisfied from the evidence)."

It is clear that in this portion of the charge his Honor was not addressing himself to the question of *quantum* or burden of proof, but was explaining to the jury that under the indictment in the conspiracy case no one defendant could be found guilty unless at least one more defendant was also found guilty, because it takes at least two to form a conspiracy. This assignment of error is overruled.

Assignment of error No. 57 is to the following excerpt from the charge: "In both of these cases it is your responsibility and duty to return a verdict of guilty or not guilty, just as you find the facts to be and beyond a reasonable doubt." This excerpt in context reads as follows: "Gentlemen, there has also been some question or some statement made about the punishment that may or may not be inflicted in the event of a guilty verdict. I instruct you that you are not to consider that. (In both of these cases it is your responsibility and duty to return a verdict of guilty or not guilty, just as you find the facts to be and beyond a reasonable doubt), and pronouncing judgment on the verdict of the jury is the responsibility of the Presiding Judge."

The appellants cite and rely upon *S. v. Patterson*, 212 N.C. 659, 194 S.E. 283, and *S. v. Johnson*, 227 N.C. 587, 42 S.E. 2d 685. In the last cited case, the court said in its charge to the jury: "The defendant contends that he is not guilty; the State contends that you should be satisfied, by the greater weight of the evidence, that he is guilty." In the *Patterson* case the court instructed the jury as follows: "Gentlemen of the jury, you will see in this case that you may return one of three verdicts, as you so find from the evidence and beyond a reasonable doubt: first, guilty of murder in the second degree; second, guilty of manslaughter; third, not guilty."

In each of the last cited cases a new trial was granted. However, in the instant case, it is quite clear that in giving the instruction complained of, the court was not instructing the jury on the burden of proof, but was informing the jury that it should not concern itself with the question of punishment, that the question of punishment was the responsibility of the court. Moreover, the next four paragraphs of the charge, following the last quoted portion thereof, in the instant case, were devoted exclusively to instructions on the burden of proof and what the jury would have to find, beyond a reasonable doubt, with respect to the charges in the two bills of indictment, before the jury could return verdicts of guilty.

The jury was also instructed in each case that if the jury failed to find the defendants or either of them guilty beyond a reasonable

doubt, as charged in the bills of indictment, "it will be your duty to return a verdict of not guilty, or if, upon a fair and impartial consideration of all the facts and circumstances in the case, you have a reasonable doubt as to their guilt, it is your duty to give them and each of them the benefit of the doubt and acquit them or him."

Furthermore, near the beginning of the charge, the jury was instructed as follows: "To the charges in each bill of indictment, each of the defendants named therein has come into court and entered a plea of not guilty; the plea of not guilty thus interposed challenges the credibility of the State's evidence, and raises in behalf of each of the defendants a presumption of innocence, that is, each of the defendants, in this as in all criminal cases, enters upon the trial presumed to be innocent, and this presumption remains with and surrounds them throughout the trial and entitles them to an acquittal at your hands unless and until the State has, by competent evidence, satisfied you and each of you of their guilt beyond a reasonable doubt."

We hold that when the charge given in the trial below is considered contextually, no prejudicial error of sufficient merit to warrant a new trial as to these defendants is made to appear.

The thirteen other assignments of error to the charge have been abandoned. Other exceptions and assignments of error set out in the record have been abandoned or, in our opinion, present no prejudicial error.

As to defendants Ashley and Dansavage
Reversed.
As to defendants Williams and McCain
No error.