STATE OF NORTH CAROLINA v. BOYD BAXTER SQUIRES AND ALVIN THOMAS WILLIFORD.

(Filed 12 January, 1968.)

1. **Searches and Seizures § 1—**

   The search of a defendant's room without a search warrant is unlawful, and it is error to admit in evidence the shotgun shells found therein which tend to implicate defendant, and further error for the court to instruct the jury in regard to such evidence obtained without a search warrant.

2. **Criminal Law § 79—  Admission of evidence competent against one defendant only is prejudicial to the other when its admission is not restricted.**

   The State's case was that one defendant had a sawed-off shotgun and with the other defendant entered an ABC store, and that the other defendant robbed the cash registers while the first defendant held the employees at bay with the gun. The defendant without the gun was permitted to testify that the defendant with the gun had just gotten out of prison, how he was dressed at the time of the crime and where he resided, and the color and make of his car, all of which implicated the defendant with the shotgun. *Held:* The admission of the evidence was incompetent and was prejudicial to the defendant who carried the shotgun, which error was emphasized by the failure of the court to restrict the consideration of such testimony to the defendant making the statements, and the court's later instruction to disregard this testimony if it tended to implicate such defendant does not cure the error when the court again recapitulates this evidence without restriction.

3. **Criminal Law § 146—**

   A new trial must be granted by the Supreme Court for incompetent evidence entered in the trial below, since the question for determination by

the Supreme Court is not whether there was sufficient competent evidence to convict but whether incompetent evidence of a prejudicial nature was admitted over objection.

**4. Criminal Law § 103—**

The jury has the right to assume that all of the evidence admitted is competent unless the court effectively removes it from their consideration, since the competency of the evidence is the province of the court and its weight and credibility are for the jury.

APPEAL by defendant, Boyd Baxter Squires, from *Canaday, J.,* April 2, 1967 Criminal Session, WAKE Superior Court.

The defendant, Boyd Baxter Squires, and one Alvin Thomas Williford, were indicted by the Wake County Grand Jury for armed robbery by the threatened use of a sawed off shotgun, forcibly took from Thomas R. Freeman, Jr. and James Walter Edwards, the sum of $580.15 in United States money.

The offense is alleged to have occurred on December 6, 1966 at the Wake County ABC Store No. 4 in Raleigh. Upon arraignment, each defendant, through court appointed counsel, entered a plea of not guilty.

State's witnesses, Thomas R. Freeman, Jr. and James Walter Edwards, each testified that he was employed by the Wake County ABC Board at its store on East Cabarrus Street in Raleigh. At approximately 5:30 p.m. on December 6, 1966, the defendants Squires and Williford entered the store. Squires had a sawed off shotgun and, by its threatened use, held the witnesses at bay until he and Williford seized the contents of the cash registers in the store. The amount of money taken was $580.15. Squires wore a long raincoat and hat. He wore glasses.

State's witness, Milton (Bud) Hunter, who worked in a music store next door, testified he saw Squires and Williford in the process of holding up the employees of the ABC store. Fearing they would visit his employer's store, in which he was alone, he gathered the store's cash and the owner's pistol and left the store for the purpose of hiding the cash in a motor vehicle outside. As Squires and Williford completed the hold up, they passed by Hunter in the alley between the stores. Williford cursed and struck him. The witness returned the compliment by firing three shots at Williford with the pistol, one of which shattered Williford's lower leg. However, Williford managed to board a city bus. Hunter notified the police who intercepted the bus a few blocks away. Officers Denning and Mohiser found Williford on the bus with blood gushing from a gunshot

·wound in his leg. They placed him under arrest, "warned of his rights", called an ambulance, and had him admitted to the hospital. He declined to talk about anything except his wounds. A search of his pockets produced several hundred dollars in bills.

Officer Denning testified that while Williford was in the emergency room on a stretcher, bleeding, in a heavy sweat, though it was December, and while glucose was being administered by the nurses, the officer obtained from him, among other admissions, the following: "He stated that he didn't know the man (his companion) by name, had been knowing him about three days, and had just got out of prison and all he knew he called him Joe . . . Williford stated that he (the companion) lived in the Andrew Johnson Hotel . . . in Room 318; I asked him as to what kind of a car the other person had, he stated that he had a Rambler with a white top and a dark bottom; . . ." The defendant Squires objected and moved to strike. COURT: "I don't see that it implicates him. . . . Gentlemen, insofar as this testimony may tend to implicate the defendant Squires, I instruct you that you will disregard it; . . ." The foregoing is the subject of exception and Assignment of Error 7.

The State offered testimony that Squires, for the previous 25 days, had rented and lived in Room 318 at the Andrew Johnson Hotel. He drove a Rambler automobile with a white top and dark body. The officers obtained the key, opened and searched Room 318, without a search warrant. They found in the room 12 gauge shotgun shells loaded with No. 1 buckshot.

State's witness Annie Mae Williams testified that soon after the hold up she found under an automobile in her backyard a long raincoat, a sawed off shotgun, a hat, and a pair of glasses. These articles were found a few feet from the rear of the ABC store, and in the direction in which Squires and Williford had fled. The shotgun was loaded with two No. 1 buckshot shells. The shells were introduced as State's Exhibit No. 6.

The defendants testified and offered evidence of other witnesses in their behalf. Williford testified he went into the liquor store as a customer when a man whom he did not know came in with the shotgun and ordered him to get the money from the cash registers and from a customer in the store. After he complied, the man took all the money from him on the outside of the store. The man with the gun ordered him to "get out" and while he was fleeing from the man with the gun, he was shot by Hunter. He did not remember making any statements to Officer Denning.

Squires testified he did not go to the ABC store and did not participate in the holdup and knew nothing about it. He introduced evidence indicating that he had recently obtained a considerable

amount of cash, approximately $800. When arrested, 2 or 3 hours after the robbery, he had several hundred in currency in his pocket.

The jury returned verdicts of guilty as to each defendant. From a prison sentence of 18 to 20 years, the defendant Squires appealed.

*T. W. Bruton, Attorney General; Millard R. Rich, Jr., Assistant Attorney General, for the State.*

*Vaughan S. Winborne for defendant appellant.*

HIGGINS, J. The appellant has assigned numerous errors in the admission of evidence and in the Court's charge. We discuss herein only Assignments 4, 7 and 11. We do not intimate that other assignments are non-meritorious.

By Assignment No. 4, the appellant challenges the admission of the box of 12 gauge shotgun shells loaded with No. 1 buckshot taken from Squires' room at the Andrew Johnson Hotel, which the officers searched without a warrant. Officer Goodwin testified he and Officer Johnson went to Room 318 and found the door locked. ". . . I searched the room . . . I found clothing, personal papers, shotgun shell number one buck, 12 gauge. . . ." The shells were similar in size and loads to the two found in the gun at the scene of the holdup and which were introduced in evidence as State's Exhibit No. 6. The appellant objected to the introduction of the shells found in Room 318 on the ground they were obtained as a result of an illegal search. The objection should have been sustained.

This Court, in *State v. Mills*, 246 N.C. 237, 98 S.E. 2d 329, opinion by Parker, J. (now C.J.), stated: " 'A rooming house is also protected against unreasonable searches and seizures, as is a person's room in an apartment house, hotel, rooming or boarding house, or in a tourist camp.' " The officers had no right to enter and search appellant's room without a warrant authorizing the search. The shells obtained by the unlawful search were inadmissible in evidence. Since the shells found in the room appeared to be identical to those with which the sawed off shotgun was loaded, the effect of the admission of the box of shells was devastating. Assignment of Error No. 4 is sustained.

Tied in with Assignment No. 4 is Assignment No. 11, which involves the Court's charge recapitulating the evidence. ". . . further, that Officer Johnson saw or observed a box of shotgun shells in the defendant Squires' room, that is in Room 318 in the Andrew Johnson Hotel and that these gun shells seen by Officer Johnson are similar in appearance to the two shotgun shells designated as State's Exhibit Six."

Assignment of Error No. 7 involves the testimony of Officer Denning and the Court's recapitulation of that evidence concerning the admissions made by Williford in the hospital. At the time of Williford's arrest on the bus, the warning as to his rights was given. At that time he declined to talk about anything except his wounds. At the time of the admissions, Williford was on a stretcher in the emergency room, being administered glucose, bleeding and calling for water. In this condition, shortly after the shooting, the officer obtained from him the admission about which Officer Denning testified. The evidence came into the case in this way:

"SOLICITOR: Just tell us from start to finish what he told you.

A. He stated that he didn't know the man by name, had been knowing him about three days, had just gotten out of prison and all he knew he called him Joe.

Objection and move to strike.

COURT: Overruled.

EXCEPTION.

A. The man was wearing a hat and glasses; he stated that the man . . . lived in the Andrew Johnson Hotel . . . in Room 318. I asked him as to what kind of car the other person had, he stated that he had a Rambler with a white top and a dark bottom.

Objection by Squires.

COURT: I don't see that it implicates him . . . Gentlemen, insofar as this testimony may tend to implicate . . . Squires, I instruct you that you will disregard it."

Thereafter, the State offered evidence that Squires' room in the Andrew Johnson Hotel was No. 318 and that he had a Rambler automobile with a white top and a black bottom.

Conceivably we might be justified in saying the instruction to the jury to disregard the evidence would cure the error, but for the Court's recapitulation of evidence in the charge in these words: "That defendant Williford told officer Denning that the man who was with him at the liquor store lived in Room 318 at the Andrew Johnson Hotel and that this man owned a Rambler automobile and that he knew this man only as Joe; that he, the defendant Williford, and the man known as Joe walked to the ABC store from the hotel and that they had planned to walk back to the hotel after the robbery. And the State offered further evidence which tends to

show that after their conversation . . . Officer Denning immediately called and related Williford's statements to the radio officer at the Raleigh Police Department." At the time Williford's testimony was admitted, the Court intimated the evidence did not implicate Squires. That is true, but later on the other evidence bridged the gap and made Williford's statements very material.

While the Court, in other parts of the charge, referred to Williford's admissions to the officer, not once in the charge did the Court instruct the jury that Williford's statements made to the officer, and related by him to the jury, did not constitute evidence against Squires. Williford's admissions only indicentally involved himself. Their main thrust was against Squires. True there was direct and positive evidence by three eye witnesses that Squires was the man with the sawed off shotgun, wearing a raincoat, hat and glasses, participating in the holdup. That evidence was clear of taint. But the question of law for this Court is not whether there was sufficient admissible evidence to convict, but whether incompetent evidence of a prejudicial nature was admitted over objection. The Court does not weigh the evidence. That is the function given to the jury. Whether evidence has any weight is a matter of law for the Court. If it has weight, the jury must manipulate the scales. *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Williams,* 255 N.C. 82, 120 S.E. 2d 442.

Williford testified he was in the ABC store at the time one unknown to him entered with a shotgun and forced him to take the money from the cash register. Squires testified he was neither present nor participated, nor had any knowledge of the offense charged. The main issue was whether Squires was present and participating. The resolution of that issue required the jury to weigh the evidence. The jury assumes, and has a right to assume, all evidence admitted is competent unless and until the Court effectively removes from their consideration all incompetent evidence which the Court has permitted them to hear. "The jury cannot exercise the prerogative of the Judge. The Judge cannot exercise the prerogatives of the jury. The two are distinct and neither has a right to invade the other's field." *State v. Fogleman,* 204 N.C. 401, 168 S.E. 536.

In this case the Court permitted the jury to weigh against the appellant the hearsay evidence of Officer Denning, quoting Williford. The State offered testimony of three eye witnesses to all the essential elements of a robbery with firearms. Their identity of the appellant as one of the participants was unequivocal. With that sort of evidence, the Solicitor was poorly advised when he jeopardized the trial by offering the hearsay statements made by Williford after his arrest and while he was undergoing emergency treatment for

serious gunshot wounds. He had first refused to talk. Our cases, long before recent pronouncements of other courts, have held that confessions must be voluntary to be admissible. This Court stated that rule 100 years before *Miranda* was born. *State v. Roberts,* 12 N.C. 259; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365. The latter case was reversed by the United States Supreme Court, 384 U.S. 737, 16 L. Ed. 2d 895.

The Solicitor likewise used bad judgment in placing in evidence the box of shotgun shells taken from the appellant's locked room at the Andrew Johnson Hotel, by officers who were not equipped with proper process to force entry into that room. For the errors herein discussed, the appellant is entitled to and is awarded a

New trial.