STATE OF NORTH CAROLINA v. RAYMOND CRANFORD CLONTZ

No. 120

(Filed 27 January 1982)

**Criminal Law § 89.7; Witnesses § 1— psychiatric examination of witness—no power to compel**

> In a prosecution for second-degree rape, there was no error in the denial of defendant's pretrial motion that the prosecutrix, a twenty-year-old woman who was affected with cerebral palsy and possessed an I.Q. of approximately sixty, be ordered to undergo a psychiatric examination. The Court adopted the rationale of *State v. Looney,* 294 N.C. 1 (1978) and held that a trial judge does not have the discretionary power to compel an unwilling witness to submit to a psychiatric examination.

Justice Exum dissenting.

Justices COPELAND and CARLTON join in this dissent.

ON certiorari to review decision of Court of Appeals' opinion by Judge Vaughn, Judge Wells concurring, and Judge Becton dissenting, reported in 51 N.C. App. 639, 277 S.E. 2d 580 (1981), finding no error in trial before *Albright, J.,* at the 12 May 1980 Session of CABARRUS County Superior Court. Defendant did not perfect his appeal of right in due time, and we allowed his petition for certiorari to permit him to perfect his late appeal on 31 August 1981.

Defendant was charged with second-degree rape in an indictment which alleged:

> that on or about the 2nd day of February, 1980, in Cabarrus County Raymond Cranford Clontz unlawfully and wilfully did feloniously rape, ravish, carnally know, and engage in vaginal intercourse with Donna Safrit by force and against her will while the said Donna Safrit was mentally defective, mentally incapacitated and physically helpless and while the said Raymond Clontz knew and should reasonably have known that Donna Safrit was mentally defective, mentally incapacitated and physically helpless.

Defendant's pretrial motion for a psychiatric examination of the prosecuting witness, Donna Safrit, was denied.

The State offered evidence which tended to show that on 2 February 1980 David Clontz invited Donna Safrit to have dinner at his brother's house trailer in Cabarrus County on the Old Charlotte Road. Ms. Safrit was a twenty-year-old woman who was afflicted with cerebral palsy which had impaired the use of the right side of her body. She had completed the ninth grade in school and possessed an I.Q. of approximately sixty. Before dinner defendant and Donna Safrit were left alone in the trailer when his brother David went to the store to purchase some groceries. After David left, defendant locked the doors to the trailer and forced the prosecuting witness into a bedroom where he had sexual intercourse with her against her will.

In corroboration of the testimony of the prosecuting witness, her brother-in-law Joe Salcedo testified to statements made to him by the prosecuting witness within a few days after the alleged rape.

Defendant did not testify but offered testimony by Sherry Almond and David Hargett which tended to show that at the time the rape allegedly occurred Hargett was present in defendant's trailer during the entire time that David Clontz was absent and that during that time defendant engaged in a telephone conversation with Almond. Hargett testified that no rape occurred during the evening of 2 February 1980.

The jury returned a verdict of second-degree rape. The trial judge imposed a prison sentence of twenty years minimum, twenty years maximum. Defendant appealed.

*Rufus L. Edmisten, Attorney General, by J. Chris Prather, Assistant Attorney General, for the State.*

*James H. Carson, Jr., and Cecil R. Jenkins, Jr., for defendant-appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the trial judge's denial of his pretrial motion that the prosecutrix, Donna Safrit, be ordered to undergo a psychiatric examination.

Defendant's pretrial motion for a psychiatric examination was aimed toward determining the prosecutrix's competence and reliability as a witness.[1]

After his motion for a psychiatric examination was denied, defendant by a trial motion sought to have the prosecutrix's testimony suppressed. In support of this motion, defendant offered the testimony of Dr. Peter Crombes. Dr. Crombes, a clinical psychologist, testified at the pretrial hearing that on 9 August 1979, six months before the alleged rape and nine months before the trial, he tested Ms. Safrit in conjunction with her application to the North Carolina Department of Vocational Rehabilitation. Dr. Crombes gave several psychological tests to Ms. Safrit in order to evaluate her employment ability and provide recommendations as to the most suitable way in which to assist her in obtaining employment. Dr. Crombes' psychological examination revealed that Ms. Safrit had a tendency to project blame onto others and was afraid of men believing them to be people who "come to get you or hurt you, rape you;" however, he also testified that:

> Basically she has sufficient understanding to be capable of giving a correct account as to what she's seen or heard with respect to a question at issue. She is capable of giving a correct account as to what she's seen or heard, to the extent that she can accurately remember details and so on which is limited by her ability to understand and remember. She would be capable of giving a correct account of what she has seen or heard. She has sufficient understanding to com-

---

1. On oral argument before this Court on 8 December 1981, defendant's counsel argued that defendant was entitled to have his motion for a psychiatric examination of the prosecuting witness granted in order to determine whether she was in fact "mentally defective, mentally incapacitated, or physically helpless" as required for prosecution pursuant to G.S. 14-27.3(a)(2). At no point during the pretrial proceedings, at trial or before the Court of Appeals, did defendant question the prosecutrix's incapacity in terms of the statutory requirements upon which the indictment was drawn pursuant to G.S. 14-27.3(a)(2). Instead, defendant sought to have the prosecutrix examined in order to question her credibility and competence as a witness. Since defendant did not raise the question of whether he was entitled to determine if the prosecutrix was in fact "mentally defective, mentally incapacitated, or physically helpless" in order to support an indictment based upon G.S. 14-27.3(a)(2) at the trial level or in the Court of Appeals he is precluded from now raising that issue in this Court for the first time. *State v. Dorsett*, 272 N.C. 227, 158 S.E. 2d 15 (1967).

prehend the obligations of an oath to tell the truth. In my professional opinion Donna Safrit does have sufficient understanding to comprehend the meaning of an oath to tell the truth. In my opinion she has sufficient mental ability to understand and relate under oath the facts which she has observed as will assist the jury in determining the truth of what happened in the incident wherein the defendant is charged here in Court.

In addition to the testimony of Dr. Crombes, the trial judge heard testimony from the prosecuting witness and considered an affidavit executed by defendant's attorney. At the conclusion of the hearing, the trial judge found facts consistent with the evidence before him and concluded:

(a) That the witness, Donna Safrit has the capacity to understand and to relate under the obligation of an oath facts which will assist the jury in determining the truth with respect to the ultimate facts which it will be called upon to decide in this case, and,

(b) That the witness, Donna Safrit, is a competent witness.

The majority in the Court of Appeals, relying upon our case of *State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978), found no error in the trial judge's denial of defendant's motion for a compulsory psychiatric examination of the prosecuting witness. Judge Becton, in his dissent, took the position that the opinion in *Looney* was inconclusive and was distinguishable from instant case. He espoused the view taken by Justice Exum in his concurring opinion in *Looney*.

In *Looney* Justice Lake, speaking for the Court, after extensive review of the decisions from other jurisdictions, in part, stated:

To hold that a trial court in this State may require a witness, against his will, to subject himself to a psychiatric examination, as a condition to his or her being permitted to testify, is also a serious handicap to the State in the prosecution of criminal offenses. If the witness simply refuses, there may well be nothing the prosecuting attorney can do to induce the witness to comply with the order. In many instances, a material witness for the State is none too eager to testify under any circumstances. To permit the defendant to

obtain a court order, directing him or her to submit to a psychiatric examination as a condition precedent to his testifying, may well further chill his or her enthusiasm for taking the stand or at least give him a way out of doing so. In many cases, there would be no insurmountable difficulty in the way of a hard-pressed defendant's obtaining such an order and bringing this escape route to the attention of the witness.

In our opinion, the possible benefits to an innocent defendant, flowing from such a court ordered examination of the witness, are outweighed by the resulting invasion of the witness' right to privacy and the danger to the public interest from discouraging victims of crime to report such offenses and other potential witnesses from disclosing their knowledge of them.

We think that so drastic a change in the criminal trial procedure of this State, if needed, should be brought about, as was done in Massachusetts, by a carefully considered and drafted statute, not by our pronouncement leaving the matter to the unguided discretion of the trial judge.

294 N.C. at 28, 240 S.E. 2d at 627.

Justice Exum, concurring, concluded that "our trial judges have the power, to be carefully used in the exercise of their sound discretion, to order in appropriate circumstances the psychiatric examination of any witness as a condition to receiving the testimony of that witness." 294 N.C. at 29, 240 S.E. 2d at 628.

It is well established in this jurisdiction that the *competency* of a witness is a matter for the trial judge and is not reviewable absent a clear showing of abuse of discretion or when the ruling is based upon a misapprehension of the law. 1 Stansbury's N.C. Evidence § 55 at 160-63 (Brandis Rev. 1973); *State v. Cooke,* 278 N.C. 288, 179 S.E. 2d 365 (1971). The *credibility* of the evidence is a matter for the jury. *State v. Squires,* 272 N.C. 402, 158 S.E. 2d 345 (1968). In connection with this division of power, we reiterate with approval the observations of Judge Duniway in *United States v. Barnard,* 490 F. 2d 907, 912-13 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 40 L.Ed. 2d 310, 94 S.Ct. 1976 (1974), concerning the possible effect of psychiatric testimony upon the trial of a case, as previously quoted by Justice Lake in *Looney,* to wit:

As we have seen, competency [of a witness] is for the judge, not the jury. Credibility, however, is for the jury — *the jury is the lie detector in the courtroom.* * * * It is now suggested that psychiatrists and psychologists have more of this expertise than either judges or juries, and that their opinions can be of value to both judges and juries in determining the veracity of witnesses. *Perhaps.* The effect of receiving such testimony, however, may be two-fold: first, it may cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is a collateral, but still an important matter. For these reasons we, like other courts that have considered the matter, are unwilling to say that when such testimony is offered, the judge must admit it.

294 N.C. at 26, 240 S.E. 2d 626.

We are aware that many jurisdictions have adopted the view that a trial judge may in his discretion order an unwilling prosecutrix in a sex offense case to submit to psychiatric examination. *See State v. Jerousek,* 121 Ariz. 420, 590 P. 2d 1366 (1979); *Thompson v. State,* 399 A. 2d 194 (Del. 1979); *State v. Filson,* 101 Idaho 381, 613 P. 2d 938 (1980); *State v. Gregg,* 226 Kan. 481, 602 P. 2d 85 (1979); *Washington v. State,* 608 P. 2d 1101 (Nev. 1980); *State v. Boisvert,* 119 N.H. 174, 400 A. 2d 48 (1979); *State v. Romero,* 94 N.M. 22, 606 P. 2d 1116 (1980); and *State v. Demos,* 94 Wash. 2d 733, 619 P. 2d 968 (1980). The most extreme view that we find in our research is Dean Wigmore's statement that:

No judge should ever let a sex offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to be a qualified physician.

3A Wigmore, Evidence § 924a (Chadbourn rev. 1970). *See also,* McCormick, Handbook of the Law of Evidence § 45 at 95-96 (2d Ed. 1972). We reject this view without discussion. However, we agree with Dean Wigmore's recognition that a rule requiring any complaining witness in a sex offense case to undergo a psychiatric examination to determine her competency or credibility would require a legislative mandate. 3A Wigmore, Evidence § 924B at 747-48 (Chadbourn rev. 1970). This view is in accord with the holding in *Looney. See also People v. Lewis,* 25 Ill. 2d 442, 185

N.E. 2d 254 (1962); *Wedmore v. State,* 237 Ind. 212, 143 N.E. 2d 649 (1957); *Commonwealth v. Gibbons,* 393 N.E. 2d 400 (Mass. 1979); *State v. Walgraeve,* 243 Or. 328, 412 P. 2d 23 (1966). We have no such legislative mandate in North Carolina. The Court in *Looney* noted that if there be such a drastic change as would permit a court-ordered psychiatric examination, it should be done by carefully considered and drafted legislation. The legislature has not seen fit to follow that course. Just prior to *Looney* the legislature enacted G.S. 8-58.6 commonly known as "the Rape Victim Shield Law."[2] Enactment of this law amounted to a declara-

---

2. G.S. 8-58.6 became effective 1 January 1978. *State v. Looney, supra,* was filed 24 January 1978. G.S. 8-58.6 states:

(a) As used in this section, the term "sexual behavior" means sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial.

(b) The sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:

(1) Was between the complaint [sic] and the defendant; or

(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

(3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

(c) No evidence of sexual behavior shall be introduced at any time during the trial of a charge of rape or any lesser included offense thereof or a sex offense or any lesser included offense thereof, nor shall any reference to any such behavior be made in the presence of the jury, unless and until the court has determined that such behavior is relevant under subsection (b). Before any questions pertaining to such evidence are asked of any witness, the proponent of such evidence shall first apply to the court for a determination of the relevance of the sexual behavior to which it relates. The proponent of such evidence may make application either prior to trial pursuant to G.S. 15A-952, or during the trial at the time when the proponent desired [sic] to introduce such evidence. When application is made, the court shall conduct an in-camera hearing, which shall be transcribed, to consider the proponent's offer of proof and the arguments of counsel, including any counsel for the complainant, to determine the extent to which such behavior is relevant. In the hearing, the proponent of the evidence shall establish the basis of admissibili-

tion by the legislature that it is the policy of this State to prevent unnecessary intrusion into the privacy of victims of sex crimes which are irrelevant to the prosecution of an individual charged with such crimes. Should we recede from our holding in *Looney* we would be acting contrary to this announced public policy.

To order the victim of a sex crime to unwillingly submit to a psychiatric examination would result in a profound invasion of her privacy which, in our opinion, would deter innocent victims of such crimes from ever making complaints. This conclusion is not without foundation. Indeed, as Justice Carlton pointed out in *State v. Fortney*, 301 N.C. 31, 269 S.E. 2d 110 (1980):

> Rape is one of the most underreported of crimes. Estimates are that from 3 ½, *President's Commission on Law Enforcement and Administration of Justice, The Challenges of Crimes in a Free Society* 21-22 (1967) to 20, *Berger, supra* at 5, times the number of rapes reported actually occur. Only 60% of those arrested are charged and conviction rates for those charged are low compared to other crimes, *Berger, supra* at 6 (35% for rape as compared to 70% for other crimes). *See also* National Institute of Law Enforcement, U.S. Department of Justice, *Forcible Rape: An Analysis of Legal Issues* 3 (1978) (3% of 635 rape complaints in the sample resulted in convictions of rape or some lesser crime). *Part of the reluctance of victims to report and prosecute rape stems from their feeling that the legal system harasses and humiliates them.*

*Id.* at 42, 269 S.E. 2d at 116. (Emphasis added.)

For reasons here stated, we adopt the rationale of *Looney* and hold that a trial judge does not have the discretionary power

---

ty of such evidence. If the court finds that the evidence is relevant, it shall enter an order stating that the evidence may be admitted and the nature of the questions which will be permitted.

    (d) The record of the in-camera hearing and all evidence relating thereto shall be open to inspection only by the parties, the complainant, their attorneys and the court and its agents, and shall be use only as necessary for appellate review. At any probable cause hearing, the judge shall take cognizance of the evidence, if admissible, at the end of the in-camera hearing without the questions being repeated or the evidence being resubmitted in open court.

to compel an unwilling witness to submit to a psychiatric examination.

The decision of the Court of Appeals is

Affirmed.

EXUM, Justice, dissenting.

The indictment against defendant for second degree rape rests on two alternative theories: (1) Defendant had vaginal intercourse with Donna Safrit by force and against her will, G.S. 14-27.5(a)(1). (2) Defendant had vaginal intercourse with Donna Safrit who at the time was either "mentally defective, mentally incapacitated, or physically helpless." G.S. 14-27.5(a)(2). The state relied entirely on the testimony of Donna Safrit (corroborated by evidence of her pre-trial statements to another witness) to establish what happened on the occasion in question. There is little in her testimony to support the theory that defendant forcibly engaged in vaginal intercourse with her. The state seems primarily to have relied on the theory that Donna Safrit was "mentally defective" or "mentally incapacitated" at the time of the alleged offense.[1] It offered the testimony of Dr. Peter Crombes to establish this element of the offense.

Defendant's pre-trial motion for a mental examination of Donna Safrit was summarily denied by Judge Albright who interpreted *State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978), to mean that trial judges have no authority to order such examinations. The majority's decision confirms that Judge Albright properly interpreted *Looney*. The law in this area was carefully canvassed in Justice Lake's opinion for the majority in *Looney*. I continue to hold to the view I expressed in my concurring opinion in *Looney*, 294 N.C. at 29, 240 S.E. 2d at 628:

"As have most of the well-considered decisions on the subject, to which the majority refers, I would conclude that our trial judges have the power, to be carefully used in the

---

1. Judge Albright's jury instructions are not in the record, but on oral argument defendant's counsel stated that the case was submitted to the jury on both theories.

exercise of their sound discretion, to order in appropriate circumstances the psychiatric examination of any witness as a condition to receiving the testimony of that witness. In this case the denial of defendant's motion for such an examination was well within the discretion of the trial judge and should not be held for error.

As the majority wisely recognizes the witness' rights must be given due consideration. Defendant should be required to make a strong showing that the witness' mental make up is such that a psychiatric examination would probably reveal either that the witness is incompetent or that the witness' credibility may be subject to serious question. Situations calling for the entry of such an order would, it seems, be rare indeed. But if called for, our judges should have the power to enter the order."

This view is bolstered not only by the authorities cited in the majority opinion here and in *Looney*, but by the well-considered dissenting opinion of Judge Becton in the Court of Appeals.

My view is also bolstered by the compelling facts of this case. For here the state relies largely on its contention that the prosecuting witness is "mentally defective" or "mentally incapacitated" in order to convict defendant of the crime charged. Particularly under these circumstances, the trial judge should be permitted in his discretion to order a mental examination of the prosecuting witness to determine whether the witness is so mentally defective or incapacitated as to be incompetent as a witness.

Indeed where the prosecuting witness' lack of mental capacity is one of the elements of the crime which the state must prove, I believe the defendant has a right to a mental examination of the witness by his own expert or an expert appointed by the court in order properly to explore a possible defense based on the absence of this element.

The majority does not reach this question on the ground that defendant's motion for a mental examination of the prosecuting witness was made in order to determine only whether she was competent as a witness and not whether she was in fact "mentally defective" or "mentally incapacitated." The majority correctly characterizes the basis for defendant's pre-trial motion

and seems to be on sound ground under our cases in refusing to consider this question on appeal.

The majority's reliance on the statement of Judge Duniway in *United States v. Barnard,* 490 F. 2d 907 (9th Cir. 1973), expressing concern for the possible effect of expert psychological testimony on the jury, seems to be misplaced. The rule for which I argue would not permit such testimony to go before the jury. It would only be offered before the trial judge to assist him in determining the witness' competence to testify. This would exhaust the uses to which such testimony could be put.

For the reasons stated, therefore, I vote to give defendant a new trial at which the trial court would be permitted to exercise its discretion in determining whether to allow defendant's motion for a mental examination of the prosecuting witness.

Justices COPELAND and CARLTON join in this dissent.